Good afternoon, Your Honors. May it please the Court, I'm Lorraine Gawley-Rufo, and I'm the counsel to the appellant in this case, Stanley Holmes. Your Honors, I will be arguing the preservation issue in this case, and in that respect, the appellant raises three arguments to support the preservation issue, and briefly, those arguments are that collateral estoppel is a principle of constitutional magnitude. It is embedded in the double jeopardy provision of the Constitution of the Fifth Amendment that's brought to the states through the 14th, and in raising the double jeopardy issue below, the collateral estoppel issue was raised as well. The second argument, just briefly, is that the Supreme Court's holding in pinholster, which precludes the additional new evidence being brought into a habeas matter, is not controlling in this case because the trial transcripts from the first trial are not new evidence, and I will explain that further in detail later, but that's our second argument. Our third argument, Your Honors, is that the appellate court in this case below expressly decided that the collateral estoppel issue and rejected it, and in thus doing that, preserved the issue for appeal. Let me ask you this. Here's the question I have on your first point. The acquittals on the felony murder counts implicated Mr. Holmes as a principle in the underlying felonies. The conviction in the second trial, he was convicted as an accomplice, and I'm trying to figure out how that implicates double jeopardy since the predicate findings that you need on felony murder as a principle are different than as an accomplice. Yes, Your Honor, and as far as that, Your Honor, I would respectfully refer to my co-counsel, Ms. Laura Cohen, who is going to deal with the substantive issues of that collateral estoppel. If I could, just for the preservation issue, to focus back to that, collateral estoppel in criminal matters, as I said, and this goes to the first argument, Your Honors, is of constitutional magnitude embedded in the Due Process Clause. The seminal case, Ashby-Simpson, provided that exact holding. Our argument is that in raising double jeopardy, we preserve the collateral estoppel argument below. Are you saying that the Supreme Court of New Jersey decided the case on the merits of collateral estoppel? The outcome may depend, speaking for myself, on whether or not we have to afford it for deference. If we don't, it may be a much easier case from your perspective. If we do, I don't know how it comes out, but I wasn't sure if you were saying that the Supreme Court, they did mention collateral estoppel. There's one little paragraph there, and they basically say the double jeopardy claim lacks substantial predicate because the original jeopardy never concluded, and I'm not even sure you'd disagree with that, but then they say in the last sentence of that paragraph, there was no double jeopardy and no collateral estoppel. Now, that's the full extent of their addressing collateral estoppels. I guess two questions. One, was it raised? And two, is that sentence, and maybe I should ask your opponent this, Ms. Frey, if I'm pronouncing that correctly, is that tantamount to deciding the case on the merits of the collateral estoppel, not the double jeopardy, but on the merits of the collateral estoppel, and to the extent they're different, do you argue against yourself when you rely upon the double jeopardy presentation to include the collateral estoppel presentation? Thank you, Your Honor. Your Honors, can I continue because my red light is on? Go ahead. Thank you very much. And specifically, Your Honor, that was our third argument in that the fact that the appellate court, and it was the appellate court because cert was denied in the New Jersey Supreme Court, that the appellate court decided the issue on double jeopardy, and it specifically said, and collateral estoppel grounds. And the significance of that… Are you saying they decided on the merits of collateral estoppel? I believe so, Your Honor. And the reason for that is because of the movement in the Supreme Court's holdings as well. Because, for example, Your Honor, in Yaeger, I think it's pronounced Yaeger, Yaeger specifically held in Ashe, referring to Ashe, they specifically said, we squarely held that the double jeopardy clause precludes the government from relitigating any issue, an issue that was necessarily decided by a jury's acquittal in a prior trial. So it doesn't say that collateral estoppel precluded it. It says double jeopardy. So our argument is, if you are deciding the double jeopardy on the merits, then collateral estoppel, specifically where the court holds it, says there's no collateral estoppel, is also… So isn't one of the shortcomings in your argument the fact that you didn't attach the record as is required in Ashe? So how could they possibly do a collateral estoppel analysis without the record? Well, Your Honor, even though Pinholster did hold that no new evidence can be introduced, subsequent appellate courts have held that when you are looking at the court below's record, for example, the Ninth Circuit in Charles v. Felker said that juror questionnaires that were in the trial court below but not part of the appellate record was not new evidence. So you could, in fact, consider it in a habeas matter. Also, in the Fifth Circuit in Higgins v. Cain, the Fifth Circuit said that a voir dire transcript that was not part of the appellate record was nonetheless not new evidence, so that you could look at it in a habeas case because it was accessible, is the word that they used, accessible to the state court below. Here, we have an appellate court that was sitting over the very state court where the trial occurred. But the essence of the question really is whether or not you fairly presented it. If you didn't present the record, I don't know how you can argue that you fairly presented the collateral estoppel question, even though the appellate division said the collateral estoppel didn't apply. And, Your Honor, as to that preservation, there is not a lot of case law, either in the appellate court or in the Supreme Court, where it says specifically because the appellate court of the state decided it, we are going to preserve it for appeal. However, we do have cases such as in Ray Galt's, for example, where you were focused on a specific issue all through the trial. The juvenile due process rights were never raised. They're not a part of that record. And yet, somewhere, either in the dicta, in the opinion, in the dissent of the Arizona Supreme Court, somewhere, the issue of due process rights was raised for the first time and decided by the Supreme Court. So my point is... Well, they can do stuff that someone or nobody else can manage to do. If we did something like that, we would hear about it. That's my argument. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. My name is Laura Cohen, and I am representing the amicus curiae in this matter, the Association of Criminal Defense Lawyers of New Jersey. As you know, Stanley Holmes seeks habeas relief from his 2004 conviction for robbery, burglary, and kidnapping of Nathan and Mary Johnson. And I'd like to first address the question that I believe you raised, Chief Judge McKee, with regard to whether or not... Or was it you, Judge Greenway? I'm not sure. I'm sorry. Is it a good question? Well, that's a real compliment to me. I don't even know the answer to that. That's a wrong answer. I'm sorry, but I'm stepping away from the podium. But in any event, the question as to whether or not Mr. Holmes was charged as a principal with regard to the felony murder and an accomplice with regard to the underlying felonies. And I think that in answer to that, I think those two things merge, because the prosecution's theory of the case throughout was that Mr. Holmes was essentially the driver of the getaway car. And I think that renders him... No, no, that's not what my point is. Okay. I kind of stopped once I heard that Ms. Scully-Ruffo wasn't the person. Well, now I'm sorry I waded into it. It's okay. You know, the water's fine. Come on in. But I'm Judge Greenway. Greenway. I see, I see. So here's the question that I want to put. So as I understand it, to make the argument you make about the import of the acquittal on felony murder, right, it's that he was charged as a principal, right? And so the fact that he was charged as a principal in the first trial allows you to draw certain inferences and make certain arguments about what the import of that should be on the double jeopardy and collateral estoppel. So my question to you is, in the second trial, he specifically, it's only the substantive counts, and he's specifically charged as an accomplice, right? So some of the findings that you're arguing have to have been made in the first trial were unnecessary in the second trial because, obviously, standards are different. If you're being charged as a principal, because if you're not, the inferences that you're asking to draw from the acquittal on the felony murder don't make any sense, right? But now that you're not dealing with that and you're only dealing as an accomplice, I'm not understanding why there's the inability to go forward. Well, once again, the prosecution's theory of the case was identical with regard to the substantive counts in the second trial. The facts that were elicited at the second trial were identical to those that were elicited at the first trial. But the instructions were different, right? I mean, the instruction by the court in the first trial was your client as an actor, as a principal, and obviously substantively they're different when charged in the second trial as an accomplice. Well, specifically with regard to the jury instructions on the felony murder counts, the court specifically said that in order to convict Mr. Holmes of- We all have them around, so what page are you reading from? I believe this is page 53. Of the appendix? Of the- Oh, of the trial transcript that day? Of the trial transcript, yes, from that day. So that's 1051? It's June 9th of 2004, and I believe that it is page- I have to apologize, I have it embedded in my notes. It's 1051. Okay, fine. So the courts specifically instructed the jury that in order to prove, in order to find Mr. Holmes guilty of felony murder, it had to find beyond a reasonable doubt, I don't believe specifically that he was a principal in one of the underlying felonies, but simply that he committed one of the underlying felonies. Well, okay. I'm looking at 1038, which is the charge on robbery, and specifically that would be page 26. And in order for you to find Mr. Holmes guilty of robbery, the state is required to prove each of the following elements, that he was in the course of committing the theft, number two, that while in the course of committing the theft, he knowingly inflicted, and so forth. So that's clearly a charge as a principal. Right. So once again, I think that the question here is the entirety of the record. And I think that's what the Supreme Court held in Ashe. It was certainly part of the Supreme Court's analysis in Yeager. The entirety of the record here, in addition to the charge, included all the trial testimony. It included whatever, obviously, documentary evidence was submitted and everything else. And the entirety of the record, apart from the specific instructions imparted to the jurors at the very conclusion of the case, was precisely the same. The evidence against Mr. Holmes was that he drove the two individuals who entered the house to the residence. He drove away for a while. He came back. He heard them while they were in the car discussing the fact that they had guns. And when they realized that they were being pursued by the police, or by I guess a good Samaritan and then ultimately the police, but when they realized they were being pursued, they sped up for a while. They stopped. The two people who went into the house ran. Mr. Holmes remained in the car for some period of time, then got out and ultimately was apprehended by the police officer. That testimony was identical in both of these trials. And that's the testimony, that's the only testimony that was available to each of these two juries that led them to reach the conclusions that they led, and specifically the testimony that was available in the first trial. I'm sorry. No, go ahead. Continue. I hear you. The evidence isn't going to change. I get that in both trials. But if he's not charged as a principal in the second trial, how do we get to double jeopardy and collateral estoppel? Because in order for you to make your felony murder argument that leads us there, one of the requirements of the felony murder statute is that he be guilty as a principal of the substantive offense. Right? So if he's not charged as a principal of this, you know, if in the second trial, he's not charged as a principal in the substantive offense, how do we get there? And if you have an explanation, then please tell me, is there a case somewhere that says that? Because I'm having difficulty with either question. So first of all, in Yeager, for example, and it's a different situation obviously, but in Yeager, the prosecution's theory actually changed at the second trial. And he was still charged with the same offenses, but the theory and even the evidence changed somewhat between the first trial and the second trial. And the court still held that the second trial was barred by the double jeopardy clause and specifically the collateral estoppel doctrine embedded within it. The second thing that I'd submit is that really it was more convenient for the prosecution to seek an accomplice charge in the second trial rather than in the first for the very reason you just stated. And that was the prosecution's choice. Mr. Holmes had no control over that. So to the extent that the prosecution decided in the second trial, because it was more convenient or easier for them or for whatever reason, to proceed on an accomplice theory rather than, I'm sorry, an explicit accomplice theory, as opposed to the perhaps necessary principal theory that they had to proceed with in the first trial, that still does not change the fact that Mr. Holmes was charged with exactly the same offenses. The proofs that were submitted against him were precisely the same proofs. Can I ask you this question and just maybe get a couple, because there's five counts out here on which Mr. Holmes was convicted of, to get maybe a couple counts off the board. I hear your argument, but how can you make that argument or any similar argument on double jeopardy involving the counts that involved the kidnapping and robbery of Mary? Because certainly there was no charge for felony murder. She wasn't killed. Understood, Your Honor. But the collateral estoppel doctrine does not look specifically to who the victim was, but instead to the facts that led to the conclusion of either, in this case, an acquittal on one of those counts. The felony is Ash, basically. Right. So, for example, in Ash v. Swenson, the facts are as follows. Mr. Ash was charged with, it was really remarkably similar to the situation that we have here. Mr. Ash was charged with a robbery of a number of people who were involved in a poker game. Six people. Six people involved in a poker game. It must have been quite a poker game. And the state decided to proceed with one of those robberies first and save the others for later. And his defense was, I didn't do it. And his defense was, it wasn't me, I wasn't there, it wasn't me. It wasn't me, it was an identification. It was an identification defense. Totally different facts here. Well, Your Honor, if I may, in our case, the indictment and the evidence at trial, with regard to several of those counts anyway, did not distinguish between the two. But more importantly, the felony murder counts did not specify that the commission of the felony involved a felony having to do with Nathan Johnson. Nor did it have to. Because, of course, what the felony murder statute prohibits is any death that occurs in the commission of any felony. So the state proceeded to try Mr. Holmes in this case with regard to all these felonies simultaneously. It is not for us to determine what happened in the jury room and which of those felonies that the first jury thought about or did not think about. Since you've answered that, what about the fact that New Jersey has an interesting statute on felony murder, different than Pennsylvania's statute that I'm more familiar with. It has the affirmative defenses, the specific statutory affirmative defenses. That's right. And those were all part of Mr. Holmes' defense in the first trial, were they not? Well, in fact, Your Honor, they were not. Because Mr. Holmes made clear in his statement to the police and in his testimony at trial that he knew that there were weapons in the car and that his co-defendants were armed. And the fact of knowing about the weapons defeats the affirmative defense. Defeated one of them. Right, correct. Defeated one of them, but he asserted the others. I'm sorry? He asserted the other defenses. The other grounds, but the statute actually is unusual for a bunch of reasons, and one of them is that it is an and in between each of those clauses and not an or. So in order to meet the burden of going forward with the affirmative defense, the defense is required to assert all three of those clauses. That's your answer. Okay. Should I continue? Oh, I'm out of time. I was mulling the question. I think your colleague, yeah, has answered it. Okay. I'll continue on rebuttal. Thank you. Okay. Thank you. Good afternoon, Your Honor. My name is Catherine A. Fedai. I'm a special deputy attorney general acting senior assistant prosecutor with the Bergen County Prosecutor's Office, and I represent the appellees. Let me just start with the issue which I think is pretty clear, which is collateral estoppel was never argued in the appellate division. It was never argued in the appellate division because if you look at the briefs, and that is how these cases are litigated, the defense appellate attorney argued this case as a Blockberger case. That's why he didn't order the transcripts of the first trial, because Blockberger is a legal decision. The Blockberger test, as set forth in Dixon, is are the elements the same? They don't care about the facts. Are the elements of the two crimes similar? Do they have the same elements? If they do, then they can't be retried. This case was argued, it was briefed as a Blockberger case. Collateral estoppel is different. Collateral estoppel is one of the two, as the Supreme Court points out, and it pointed out in Yeager, there are two, if you like, prongs of the double jeopardy clause. One is the Blockberger clause, which talks about one trial after conviction, prosecution, no multiple punishments. The second is collateral estoppel. Collateral estoppel is basically a factual conduct issue, which is why in Ash v. Swenson, and why in Yeager, the court said to make a collateral estoppel decision, a court must look at the record of the prior proceedings, the charges, everything. That wasn't done here, because the defense didn't argue it. The defense's argument was, by acquitting on the felony murder, that he could not be retried because that acquittal, in a sense, was the equivalent of an acquittal on the underlying felonies. And that record was not presented to the lower appellate division. To say that the appellate division has moved because it was a trial in its jurisdiction, that's not so. What's the purpose of the statement on, I think it's 1087, then, with regard, I think my colleague, Judge Fischer. When the appellate division said it?  I don't know, Your Honor. I looked at that case. Pull out of a hat. Well, you know, Your Honor, I think it's almost like when someone raises a Miranda issue, and the court says, and oh, by the way, he says he asked for. I wouldn't think that a court would be frivolous, though. Well, Your Honor, no, to tell you the truth, the Estoppel issue, I don't know why they said it, because it's clear as a bell that this was a Blockburger issue. You cannot read the defendant's brief. You cannot read the defendant's petition for certification. The petition for certification, you would think if collateral Estoppel had somehow hit his in the head, he would have raised it in the petition for certification. He didn't. So this is, this was not argued as a collateral Estoppel case. It was argued as a case of Blockburger. But yet this court doesn't even cite, just did a quick search, doesn't even cite Blockburger. They just have that one paragraph that I read earlier. Yes, because the issue actually in the appellate division was the issue which was the Richardson issue, which was the case was whether because of the acquittals, there was several acquittals, but the jury was a hung jury, and therefore whether because of the mistrial, did that constitute a continuing jeopardy. So the issue was continuing jeopardy, Your Honor, as set forth in Richardson, and that's what the appellate division relied upon, and that's what the state had argued, and that's what Judge Hochberg, in finding no problem, argued that, determined that the state court had applied reasonably Supreme Court precedent, because Richardson is a case like this case. Richardson is buried in a string site. In the appellate division opinion. That's right. It's buried in there. Well, it's not buried in there, Your Honor. The argument was whether because of the mistrial, whether that meant that there was, whether that constituted a decision, or whether it was continuing jeopardy. In Richardson, a case much like this case, which is what was relied upon by the appellate division, you had a situation where there were three counts. One count was acquitted. The other two counts were mistried. The defense argued on appeal that that meant that it was, they tried to argue that the state couldn't retry. What the Supreme Court said was those acquittals meant that the acquittal had obviously a preclusive effect, but because of the mistrial, there was continuing jeopardy. But, you know, that's why this case is a great law school exam. The Clarello Soppo cases that they rely upon, they primarily rely upon Toronto in that one little paragraph they have, where they toss in Clarello Soppo. The Supreme Court then cites two states. There's Triano, not Toronto. They cite Triano. Triano is a case where there's three offenses. There's an acquittal on one. It's a fraud case of a public official, I guess. And there's a hung jury on the other two. But the other two are not intrinsic or related to the first one. They arise out of the same course of conduct, but they're three separate offenses. Here you have a situation where the allegation is they acquitted me of the predicate. They hung on the predicate. My acquittal basically means in order for me to get the acquittal, they cannot have possibly. You cannot go to Triano for the underlying predicate because I've already been acquitted on the offense that that robbery or that kidnapping or that burglary would rise to the level of the felony murder. In the felony murder statute in Jersey, it's worded to include accomplice liability. You commit the offense with yourself or with others. So it sweeps within accomplice liability. It's a different case. And arguably, Triano has absolutely nothing to do because there the jeopardy did continue. Here, it's a very different situation than we have in Triano. And also on Richardson. I looked here at the case as you were speaking. I didn't remember an acquittal in Richardson. It seems to me Richardson stands for the proposition a little bit different than this case. There was a hung jury. The Supreme Court said that that hung jury could be double jeopardy didn't attach. Here you had an acquittal and a hung jury. Your Honor, I believe in Richardson there was an acquittal as well on one of the counts. Well, it says here that Justice Brennan Wright's petitioner was invited and tried on two counts. The jury perhaps alleged inadequacy and was unable to reach a verdict and was therefore dismissed. It doesn't say anything. I don't remember. I thought it was, Your Honor. I don't remember. I apologize if I'm incorrect. Let's assume. Enough cases out there. It's easy to get that confused. But let's assume for a moment. Well, it says claim the second trial after acquittal of one count of the federal narcotics violations. Acquittal of one count and a dismissed trial on two. I only have the dissent. Okay. Okay. Close enough. That's why the appellate division applied it. That's why Judge Hochberg, in finding that it was not an unreasonable application of clearly established Supreme Court law, applied it. It's also, Your Honor, also if you read back to my point that the Double Jeopardy Clause has separate branches, if you will. Even in Dixon. In Dixon, the case in which the United States Supreme Court determined that the same evidence test would be the Blockburger. That would be the only test now for Double Jeopardy in the Blockburger sense. The Supreme Court specifically, Justice Scalia for the majority, in speaking about collateral estoppel because Justice Souter had made some mention of it, pointed out the defendant never raised collateral estoppel before us. He never raised it. So there are differences between collateral estoppel and Blockburger. And you have to put the state court on notice. And the trial transcript was not before the appellate division. The first trial transcript. I don't know what happened at the first trial, Your Honor, because I haven't read the first trial transcript because it wasn't before the appellate division. Let me ask you this question. And so if I'm understanding you correctly, obviously your first point is they didn't raise collateral estoppel, so you don't have to deal with any of these machinations you seem to be going through. But assuming that's his point. Well, I do think it's important, Your Honor. I do think it's important because I think that it makes a difference in how you approach this case. Okay. But let's assume for a moment that we disagree. Okay. I'll assume that. So let me ask you the same question that I posed to Ms. Cohn with regard to the distinction I'm trying to draw between being charged as a principal in the first case and having a hung jury on the three substantive counts and then being charged as an accomplice. You know, it seems to me that that distinction is a substantive one and sort of vitiates any argument of collateral estoppel or double jeopardy. But I wanted your comment on that. Well, the State acknowledged that the defendant was never in the house. He was, we argued that he, taking this from the second trial because I don't know what happened in the first one, our argument was that he was an accomplice in the sense that they acted in concert and that he was guilty of felony murder because he had agreed to commit the underlying felonies. With regard to the weapons offenses, there is no accomplice liability in New Jersey in terms of weapons offenses. You know, it's either joint. I just thought it was the three substantive ones. Yes. But in terms of the kidnapping, in terms of the robbery, in terms of the burglary, he was charged as an accomplice for those crimes at the second trial, certainly. Because he never, he was never, there's not much of a distinction between principal and accomplice in New Jersey that much. But we, there was no dispute that he never entered the house. There was no dispute that he took, he personally took part in the robbery. There's no dispute that he personally, in the sense that he was physically present. But he was charged as being an accomplice as guilty as the principal. Yeah. Yeah, I know that. The question is what's the import of that as it relates to their argument? I think that the import is the fact that when the jury convicted, acquitted him of the felony murders, it didn't make a decision on the underlying felony. We can't, all we know is that they determined at the first trial that he was not involved in the killing. But how could that be? Because they, clearly somebody was dead. Clearly there was a, a someone, a burglary, a robbery, kidnapping. I guess I would have to look at the transcript to know where the kidnapping came in. But clearly there's robbery and a burglary. And a death during the course of the commission or flight. But here's the commission. So that gets you the felony murder insofar as either the robbery, the death arising out of either the robbery or the burglary. So what, one of the things I'm at a loss here is the whole accomplice liability spending on the first trial because it would not really have anything to do with whether or not this had been a felony murder conviction. The, the, because we don't have the transcript before us on the first trial, all I can say, Your Honor, is that he was acquitted of the weapons offenses. We have, he was acquitted, for example, of conspiracy to commit armed robbery. He was acquitted of the felony murders. The jury didn't reach a decision on whether he was involved with the underlying felonies. But we also know. He was acquitted of the conspiracy and the theory is that he stays outside and he's the driver. Well, it was conspiracy to commit armed robbery, Your Honor. The jury apparently had problems with his possessions of the weapon because he was acquitted of the charges of possession of a weapon. He, the jury found that either he, that he was not in either joint or actual or constructive possession. And that is a possession requirement that you know and you have control over. They acquitted on that. They acquitted on the conspiracy to commit armed robbery. So do we, does the, does the acquittal on the felony murder and on the, on the weapons offenses mean that they did not believe he was involved in the underlying felonies? It doesn't because the, because the underlying felonies didn't necessarily, didn't require the weapons necessarily. Some of them, Your Honor, for example, the, the robbery I believe, he was charged with robbery of first degree based on two concepts. First being armed, of course that was the burglar I can't remember, but being armed but also committing harm to the victims. So, and they found him guilty on both prongs at the, at the second trial. So it didn't necessarily, their acquittals did not in any way show that they had reached a decision on his presence, his guilt or innocence of the, of the underlying felonies. Thank you, Your Honor. Thank you very much. Your Honors, we did have a chance to review the jury charges from the first trial a moment ago. And on, and I'm sorry, what I have here is the original transcript, not the appendix that was submitted. But on page 51 for the June 9th transcript. Yeah, wait one second. Yeah. With regard to the felony murder count, or one of the felony murder, all three felony murder counts, the, the jury charge was as follows. Now the state does not contend that Mr. Holmes himself killed Mr. Johnson. The state charges that Mr. Johnson was shot and killed while the defendant, Mr. Holmes, alone or with one other people that is allegedly involved, was engaged in the commission of or flight after committing the crime of robbery. That does not read as an explicit primary actor. Principal. Principal actor. Thank you. Similarly, and this, this has to do with one of the weapons charges, but there is also language about Mr. Holmes acting as an accomplice rather than a principal. Now with regard to the point that counsel just made, I would submit respectfully that the only conclusion we can draw from Mr. Holmes' acquittal on all three felony counts, involving all three of the underlying felonies, is that the reason for the jury's decision is the absence or its conclusion that Mr. Holmes was not guilty of the underlying felonies. And the reason for that is because the felony murder statute requires that the state prove beyond a reasonable doubt three things. One of those things is that a person was killed. And tragically we know that Mr. Johnson was killed. The second thing is that the state must prove that the death occurred during the commission of or flight from a felony. And again, there is no question with regard to that. The only thing, the only issue that was left for the state to prove beyond a reasonable doubt was that Mr. Holmes was involved and committed one of the underlying felonies. And I would submit that under the analysis that the Supreme Court engaged in in Yeager and to a lesser extent in Ashe, that is the only conclusion that can be drawn here. The Supreme Court in these cases talks about the need for practical application of the issue identity analysis. When I look at the language, there are two spots after the selection that you, and there's nothing pejorative about selection, just what you read. Right. It says that in order for you to find the defendant Holmes guilty of felony murder in this case, the state is required to prove beyond a reasonable doubt, one, that on June 25th in Englewood that the defendant was engaged in the commission of or flight after committing the crime of robbery, and then it goes on to the other substantive counts. So that's a principle. Not necessarily, Your Honor, because I think that what the court is obviously doing there is quoting from the statutory language. But as I think the state just conceded, it is entirely possible for, in the felony murder context, for the state to proceed against someone who it has charged as an accomplice. They did that here very explicitly. And so, and the facts that were listed at trial and the facts that have been conceded by the state point only to accomplice liability. They never pointed to anything different. So if you have someone who remains outside a house when a homicide is being committed or when a felony is being committed, who has no interaction with the victims of that felony, who never touches or is never alleged to have touched the gun that was used in that felony, who has done nothing except sit in a car and be responsible for driving those people who did enter the house to and from the residence, that's the textbook definition of accomplice liability. So whether the state, whether the court used the words commit or not, yes, under the law. You're right. It's not important as to what the instruction is. It's important as to what the law requires. And the law requires that he, that the proofs be that he is a principal of the substantive offense in order for him to be found guilty of felony murder. Well, with respect, Your Honor, what the statute says is while committing or in the course of committing a felony, one can be, as I know you know far better than I do, one can be found guilty of committing a felony under an accomplice liability theory. In closing, I would submit that in this case what we have is an almost textbook example of issue identity. And what the Supreme Court held in Ashe and what it extended to this situation of hung counts in Yager is that the concept of collateral estoppel and the issue identity analysis that is an intrinsic part of that is embedded in the double jeopardy clause. It is without question an essential piece of the constitutional protection against being tried twice for the same offense. And what we had here was a situation that is almost a hybrid of the facts of Ashe and the facts of Yager. We have someone who was charged with committing a robbery, who asserted a defense of never having entered the room where the robbery occurred, and who found himself in a situation after his first trial where the jury acquitted of the homicide counts and hung on other counts. Ms. Connell, one last question. Sure. You've mentioned Yager a lot. Do you acknowledge that as far as our 2254 review we cannot consider Yager? It was decided after. I'm sorry, Your Honor, but with all due respect, I don't. I do not believe that Yager announced a new rule. In fact, Yager followed very, it hewed very closely to Ashe. It said specifically that this is in essence an extension of Ashe. And so it was not a new rule. It was an application of the Ashe doctrine to this situation of hung counts. Well, there are those two words that are important, clearly established. I agree. I think that goes back to the question of whether anything is simple. Thank you. Okay. Thank you. Interesting, I think, difficult case. We'll take the matter into advisement.